```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TERRENCE D. MARSH,**

        **Petitioner,**

                                Civil Action No. 1:21CV79
                               Criminal Action No. 1:19CR19-1
**v.**                                          (Judge Keeley)

**UNITED STATES OF AMERICA,**

        **Respondent.**

<u>**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**</u>

Pending is the pro se petition filed by Terrence D. Marsh ("Marsh") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 313).[1] For the reasons that follow, the Court **DENIES** Marsh's petition.

<u>**I. BACKGROUND**</u>

**A. Criminal Case**

On March 5, 2019, a grand jury returned a seven-count indictment and forfeiture allegation charging Marsh with (1) Conspiracy to Possess with the Intent to Distribute and Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846 ("Count One"); (2) Aiding and Abetting Possession with the Intent to Distribute Methamphetamine

---

[1] All docket numbers refer to Criminal Action No. 1:19CR19 unless otherwise noted.

MARSH v. UNITED STATES                                    1:21CV79/1:19CR19-1

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

Within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 860(a) ("Count Two"); (3) Aiding and Abetting Possession with the Intent to Distribute Heroin Within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a) ("Count Three"); (4) Aiding and Abetting Possession with the Intent to Distribute Fentanyl Within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a) ("Count Four"); (5) Aiding and Abetting Possession with the Intent to Distribute Cocaine Hydrochloride Within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a) ("Count Five"); (6) Aiding and Abetting Possession with the Intent to Distribute Cocaine Base Within 1000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a) ("Count Six"); and (7) Aiding and Abetting Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Seven") (Dkt. No. 16).

On May 10, 2019, the Government moved to dismiss Counts Five and Six of the Indictment after laboratory reports established

**MARSH v. UNITED STATES**                                            **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

that the substances seized following Marsh's arrest did not contain cocaine hydrochloride or cocaine base (Dkt. No. 76). The Court granted the motion and dismissed Counts Five and Six with prejudice (Dkt. No. 80).

Marsh proceeded to trial on the remaining five counts of the Indictment on May 20 through May 23, 2019 (Dkt. Nos. 103, 105, 109, 116). During its deliberations, the jury advised the Court on several occasions that it was unable to reach a unanimous verdict (Dkt. No. 121). Finally, after making inquiry of the foreperson and polling the individual jurors, the Court concluded that the jury was hopelessly deadlocked and declared a mistrial. Id. The Government thereafter announced its intent to retry Marsh (Dkt. No. 120).

Following a second trial between August 2 and August 8, 2019 (Dkt. Nos. 180, 181, 182, 185, 193), at which the Government added four witnesses, including two additional experts, a jury convicted Marsh on all five counts (Dkt. No. 195). On December 11, 2019, the Court sentenced Marsh to concurrent sentences of 235 months of imprisonment on each of Counts One, Two, Three, and Four, and a consecutive sentence of 60 months of imprisonment on Count Seven, for a total term of imprisonment of 295 months (Dkt. No. 224). The

3

**MARSH v. UNITED STATES**                                    **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

Court also imposed concurrent terms of supervision of five (5) years on Count One, ten (10) years on Count Two, six (6) years on Counts Three and Four, and three (3) years on Count Seven, for a total term of supervision of 10 years. Id.

On December 17, 2019, Marsh appealed his convictions and sentence, alleging that the Court erred in (1) denying his motion for judgment of acquittal on Count Seven, (2) refusing to admit statements his codefendant made at the codefendant's plea hearing, and (3) calculating his relevant drug weight (Dkt. Nos. 226, 268). On August 11, 2020, the Fourth Circuit affirmed his convictions and sentence in all respects (Dkt. No. 268).

**B. Section 2255 Petition**

On June 17, 2021, Marsh filed a pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 313). In his petition, Marsh argues that (1) the Government failed to disclose impeachment evidence pursuant to Giglio v. United States, 405 U.S. 150 (1972); (2) the Government improperly used peremptory strikes in violation of Batson v. Kentucky, 476 U.S. 79 (1986); (3) the Court failed to conduct a hearing pursuant to Giglio; (4) the jury did not represent a fair cross section of the community; (5) the Court improperly calculated

4

**MARSH v. UNITED STATES** 1:21CV79/1:19CR19-1

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

his relevant drug weight; and (6) insufficient evidence existed to support his conviction on Count Seven (Dkt. Nos. 313, 341). The Government has disputed each of these grounds (Dkt. No. 339). The matter is fully briefed and ripe for decision.

## II. APPLICABLE LAW

Section 2255(a) permits a federal prisoner who is in custody to assert the right to be released if his "sentence was imposed in violation of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such sentence," or if his "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner bears the burden of proving any of these grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## III. DISCUSSION

Marsh is plainly not entitled to relief as all of his claims either have been procedurally defaulted or previously addressed on appeal.

### A. Procedurally Defaulted Claims

Marsh alleges that the Government engaged in prosecutorial misconduct by failing to disclose impeachment evidence pursuant to

5

**MARSH v. UNITED STATES**                                    **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

Giglio, and by improperly using peremptory strikes in violation of Batson. He also asserts that the Court failed to conduct a hearing pursuant to Giglio, and that the jury did not represent a fair cross section of the community. Because Marsh failed to raise these issues on appeal, they have been procedurally defaulted. Bousley v. United States, 523 U.S. 614, 621 (1998).

To avoid this result, Marsh must demonstrate both cause for the default and actual prejudice from the alleged errors. United States v. Frady, 456 U.S. 152, 167 (1982). For cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate prejudice, a petitioner must show that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Absent a showing of both cause and prejudice, the only remaining avenue for relief is that the petitioner was actually innocent of the crime. Bousley, 523 U.S. at 622.

Marsh cannot establish cause for his failure to raise these issues on appeal. Indeed, as Marsh concedes, he was aware of these issues during his appeal process but relied on his attorney's

6

**MARSH v. UNITED STATES**                              **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

advice that there were stronger claims to pursue (Dkt. No. 313 at 5, 7). Thus, there was not "some objective factor external to the defense [that] impeded counsel's efforts." Murray, 477 U.S. at 488. And as discussed below, Marsh has failed to establish prejudice resulting from these alleged errors.

    **1. Prosecutorial Misconduct**

        **a. Giglio Evidence**

To Marsh's contention that it failed to disclose impeachment evidence pursuant to Giglio (Dkt. No. 313 at 5-6), the Government responds that he has not identified any withheld evidence (Dkt. No. 339 at 9-10). And in his reply to the argument, Marsh clearly struggles to identify any specific evidence (Dkt. No. 341 at 1).

The Government violates a defendant's due process rights when it suppresses favorable material evidence, including impeachment evidence. Giglio, 405 U.S. at 153-55. "To establish a Giglio violation, a defendant must demonstrate that: (1) the impeachment evidence was favorable to the defendant; (2) the evidence is material, meaning the defendant suffered prejudice resulting from the violation; and (3) the evidence actually was suppressed." United States v. Wilson, 838 F. App'x 750, 756 (4th Cir. 2020) (citing United States v. Young, 916 F.3d 368, 383 (4th Cir. 2019)).

7

**MARSH v. UNITED STATES**                            **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

"Evidence is material if there is a 'reasonable probability that its disclosure would have produced a different result.'" United States v. Parker, 790 F.3d 550, 558 (4th Cir. 2015) (quoting United States v. Bartko, 728 F.3d 327, 338 (4th Cir. 2013)).

In attempting to specifically identify impeachment evidence that would establish a Giglio violation, Marsh focuses on the testimony of Jared Murdoch ("Murdoch"), a special agent with the Drug Enforcement Agency ("DEA"). He alleges that, on cross examination, after being shown a property receipt, Murdoch changed his testimony regarding whether heroin had been seized from Marsh (Dkt. No. 341 at 1). But this purported testimony does not appear in the record of the trial.

At trial, Murdoch was asked on cross examination about the property receipt but was not questioned about whether heroin had been seized from Marsh.

> DEFENSE COUNSEL: Okay. It's accurate to say that the property receipt lists not only what was seized, but from where it was seized, right?
>
> MURDOCH: Yes.
>
> DEFENSE COUNSEL: For example, if money was taken off of [Marsh's codefendant's] person, it would say, $757 taken from [Marsh's codefendant's] person, right?

8

**MARSH v. UNITED STATES**  **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

>MURDOCH: Yes.
>
>DEFENSE COUNSEL: If something was taken from the west bedroom, it's specifically listed as to where it came from, correct?
>
>MURDOCH: Yes.
>
>DEFENSE COUNSEL: If something was taken from the east bedroom, it's specifically listed where it came from?
>
>MURDOCH: Yes.
>
>DEFENSE COUNSEL: If something came from the living room, it's listed where it came from?
>
>MURDOCH: Yes.
>
>DEFENSE COUNSEL: And that applies to almost everything -- that applies to everything taken out of the house that day, right?
>
>MURDOCH: Yes.
>
>DEFENSE COUNSEL: That includes all the phones, correct?
>
>MURDOCH: Correct.
>
>DEFENSE COUNSEL: All the drugs?
>
>MURDOCH: Correct.
>
>DEFENSE COUNSEL: All the firearms?
>
>MURDOCH: Correct.
>
>DEFENSE COUNSEL: All the monies?
>
>MURDOCH: Correct.

**MARSH v. UNITED STATES**  1:21CV79/1:19CR19-1

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

> DEFENSE COUNSEL: And then miscellaneous things, like the green jacket and mailings and whatnot, correct?
>
> MURDOCH: Yes, and the suitcase, and things like that. Yes.
>
> DEFENSE COUNSEL: All right. Importantly, the Spectrum bill that was in the name of [Marsh's brother] is listed, right?
>
> MURDOCH: Yes.
>
> DEFENSE COUNSEL: And I think the Government brought out on direct, some time ago, it came out of the west bedroom?
>
> MURDOCH: I believe so, yes.
>
> DEFENSE COUNSEL: All right. So when all these phone calls are taking place [between Marsh and his brother] on February 1st of [2019], it's the day after the search?
>
> MURDOCH: Correct.
>
> DEFENSE COUNSEL: So anyone that's reading this knows exactly what was taken out of the house, and from where?
>
> MURDOCH: Yes.

(Dkt. No. 234 at 709-12). Accepting that Marsh may have misremembered Murdoch's testimony, it is clear that he did possess the specific evidence – the property receipt – that he needed to impeach Murdoch, which precludes any argument such evidence had been suppressed by the Government.

10

**MARSH v. UNITED STATES**                                  **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

Marsh also contends that, through police reports and law enforcement disciplinary records, he can establish that law enforcement officers lied under oath (Dkt. Nos. 313 at 5, 341 at 1). But he has not specifically identified any such records, nor has he provided other specifics to support this contention. He merely argues that evidence of police reports and disciplinary records would have impeached Murdoch. Accordingly, given that Marsh has provided only "vague and conclusory allegations" that the police reports and disciplinary records were favorable to him, these claims "may be disposed of without further investigation." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013). Because he cannot meet the elements of a Giglio violation, Marsh has failed to establish prejudice to avoid his procedural default.

    **b. Batson Violation**

Next, Marsh argues that the Government used peremptory strikes to eliminate jurors on the basis of race in violation of Batson (Dkt. No. 341 at 2).[2] "The steps to demonstrate a Batson violation are well-known and long-settled." United States v.

---

[2] The Government did not directly address this argument because it understood Marsh to be making a fair cross section claim. See infra p. 12.

11

**MARSH v. UNITED STATES**                              **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

Barnette, 644 F.3d 192, 203 (4th Cir. 2011). First, the defendant must establish a prima facie case of discrimination using the following three-part test:

> (1) the defendant is a member of a distinct racial group; (2) the prosecutor has used the challenges to remove from the venire members of the defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his other selection of the jury pool.

Id. The burden then shifts to the Government to prove a non-discriminatory reason for the peremptory strike. Id. at 203-04. And if the Government proves such a reason, the Court "must determine, 'in light of all the evidence with a bearing on it,' whether the defendant has proven intentional discrimination." Id. at 204 (quoting Miller-El v. Dretke, 545 U.S. 231, 252 (2005)).

Here, Marsh cannot make out a Batson violation because he has failed to establish a prima facie case of discrimination. While he "is a member of a distinct racial group," Marsh notably does not allege that "the prosecutor[s] . . . used [their] challenges to remove from the venire members of [his] race." Barnette, 644 F.3d at 203. Nor could he since the record confirms that the Government never used its peremptory strikes against members of Marsh's race.

**MARSH v. UNITED STATES**                                                 **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

Marsh does not point to other compelling "facts and circumstances surrounding the proceeding [that] raise an inference that the prosecutor[s] discriminated." Id. In the first place, it is the Court, not the Government as Marsh suggests, that selects the jury venire.[3] And contrary to Marsh's assertion the Government is not required to provide an explanation for its peremptory strikes unless a defendant first establishes a prima facie case of discrimination. Id. at 203-04. Therefore, having failed to meet the elements of a Batson violation, Marsh cannot establish prejudice to avoid procedural default.

**2. Alleged Errors by the Court**

   **a. Giglio Hearing**

Marsh suffered no prejudice from the Court's alleged failure to hold a Giglio hearing. He cites no authority in support of his bare contention that the Court should have held such a hearing. Moreover, because the Government has a duty to produce Giglio evidence upon request, a court order is not necessary. Giglio, 405 U.S. at 153-55.

---

[3] U.S. Dist. Ct. for the N. Dist. of W. Va., Plan Prescribing Method for the Composition of Jury Wheels and the Qualification and Random Selection of Grand and Petit Jurors (2020-2021), www.wvnd.uscourts.gov/sites/wvnd/files/JURY%20PLAN%20Final%20Nov%202021.pdf.

13

**MARSH v. UNITED STATES**                                      **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

### b. Cross Section Claim

Marsh also claims that his jury did not represent a fair cross section of the community. However, a review of the record establishes that Marsh's petit jury was "drawn from a source fairly representative of the community." Duren v. Missouri, 439 U.S. 357, 363 (1979). Although he alleges that African Americans or other minorities constituted only a small number of the jury venire, Marsh cannot establish "that the representation of this group in venires . . . is not fair and reasonable in relation to the number of such persons in the community." Id. at 364. Even more compelling, Marsh has provided no evidence "that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. In fact, by acknowledging that the jury in his first trial was diverse, he implicitly concedes this is not the case. The composition of his jury venire therefore was simply the result of chance, not systematic exclusion. Consequently, Marsh cannot demonstrate prejudice on this issue.

## B. Issues Previously Raised on Appeal

Finally, Marsh argues that the Court improperly calculated his relevant drug weight and that insufficient evidence existed to support his conviction on Count Seven (Dkt. No. 313 at 8-11). As

**MARSH v. UNITED STATES**                                    **1:21CV79/1:19CR19-1**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION**

the Government has correctly pointed out, however, Marsh raised both of these grounds for relief on appeal (Dkt. No. 268) and cannot now "recast[] [them] under the guise of a collateral attack." Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Nor can he identify any intervening change of law in order to avoid this proscription. Davis v. United States, 417 U.S. 333, 342 (1974). He would simply have this Court disregard the Fourth Circuit's prior decision and rule in his favor, which the Court declines to do.

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** Marsh's § 2255 petition (Dkt. No. 313) and **DISMISSES** this case **WITH PREJUDICE.**

It is so **ORDERED.**

The Clerk **SHALL** enter a separate judgment order in favor of the United States, transmit copies of this Order and the judgment order to Marsh by certified mail, return receipt requested, and to counsel of record by electronic means, and strike this case from the Court's active docket.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the district court "must issue or deny a certificate

**MARSH v. UNITED STATES** 1:21CV79/1:19CR19-1

MEMORANDUM OPINION AND ORDER DENYING § 2255 PETITION

of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rules Governing Section 2255 Proceedings 11(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because Marsh has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record, the Court concludes that Marsh has failed to make the requisite showing, and **DENIES** issuing a certificate of appealability.

DATED: September 9, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE